RICHARD PAOLINI AND MARGARET PAOLINI, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Paolini v. Commissioner
Docket Nos. 8686-78, 8687-78, 15091-79.
United States Tax Court
T.C. Memo 1982-69; 1982 Tax Ct. Memo LEXIS 676; 43 T.C.M. (CCH) 513; T.C.M. (RIA) 82069; February 11, 1982; Amended March 3, 1982 Leonard N. Zito and Ronald J. Karasek, for the petitioners. Russell K. Stewart, for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner determined the following deficiencies in the petitioners' Federal income tax: Taxable Year
Deficiency
1975
$ 2,929.32
1976
2,823.00
1977
1,451.00
Due to concessions, the issues before us are (1) the locus of petitioner Richard Paolini's (hereinafter "petitioner") "tax *677 home" for purposes of section 162(a)(2) of the Internal Revenue Code of 1954, [1](2) whether automobile expenses attributable to mileage driven daily from petitioner's apartment to and between temporary job sites and return are commuting or business expenses, and (3) whether petitioners have adequately substantiated business automobile mileage and miscellaneous business deductions. FINDINGS OF FACT The petitioners timely filed their 1975, 1976, and 1977 joint Federal income tax returns with the Internal Revenue Service. At the time they filed the petitions herein, they resided in Wind Gap, Pennsylvania. The petitioner, age 46, was born and raised in Wind Gap, Pennsylvania, and has lived there all of his life. All of his real and personal property is located there. His wife and children reside, and his children attend school, there. Petitioner's church affiliation is in Wind Gap and he is registered to vote there. Since 1973, the petitioner has been employed by the Beers Steel Erecting Corporation (Beers). Beers is a construction corporation with varying job *678 sites. Most of its jobs are within New Jersey, New York, and Pennsylvania. Ninety percent are within New Jersey. During the period 1975 through 1977, Beers performed work on a few job outside of the New York, New Jersey, and Pennsylvania area, including ones in Detroit, Michigan; Tuscaloosa, Alabama; and Cleveland, Ohio. At any given time, Beers may have been working on several jobs. Most were completed within two to three months and job sites were constantly changing. During the years in issue, it was petitioner's task to supervise all of these jobs. He was never assigned to any one job but would devote his efforts to those jobs which he determined post needed them. Petitioner's duties required that he travel extensively between job sites. Because most of the jobs were far from his residence in Wind Gap, petitioner, to save time, rented during the years in issue an efficiency apartment in South Boundbrook, New Jersey. He stayed in the apartment during the workweek and returned to Wind Gap on the weekends. Had he traveled to work each day from Wind Gap he would have been faced with travel times of two and one-half hours either way which he considered excessive. The apartment *679 was located near Beers' corporate headquarters in South Plainfield, New Jersey. Petitioner performed few of his duties at the headquarters, however; he would travel in his personal automobile each day from the apartment to and between the job sites he had determined to work on, and then return. Beers and a warehouse at its corporate headquarters in South Plainfield, New Jersey, where construction equipment and materials and vehicles were kept. On occasion, petitioner would spend a day repairing vehicles in the warehouse and running errands in his automobile to obtain replacement parts for such vehicles. If, on any given day, petitioner traveled more than fifty miles between jobs, Beers would reimburse him for his gasoline expense and tolls. Beers did not reimburse him for any meals or lodging expenses incurred on such trips. Whenever petitioner traveled out of New Jersey in order to supervise a job (e.g., to Detroit or Tuscaloosa), however, Beers did reimburse him for these expenses. Although the apartment had a small kitchen, petitioner normally dined at restaurants during the workweek due to the long hours he spent on the job. The petitioner did not maintain a telephone *680 in the apartment. He had no church affiliation and no close friends in the area outside of other Beers employees. Petitioner had a New Jersey driver's license. He was not registered to vote in New Jersey. During the years in issue, petitioner was a key employee of Beers in that he would have been the last union employee to be laid off in the event of a business slump. During the years in issue, petitioner maintained logbooks of his food and lodging expenses incurred which staying at the apartment and of his mileage each day driving in his automobile from his apartment to and between job sites and back to the apartment. He did not include any mileage driven while traveling from his home in Wind Gap to South Boundbrook at the beginning, or the other way at the end, of his workweek. Petitioner did not record in the logbooks any mileage, or meals or lodging expense, for which he was reimbursed by Beers. For each day that petitioner stayed at the apartment, he entered into the logbook either $ 10 or $ 11 for lodging expense, although he actually paid fixed yearly rentals. Based upon the logbooks, petitioners claimed the following deductions for travel expenses on their 1975, *681 1976, and 1977 joint Federal income tax returns: 1975
1976
1977
Meals & Lodging
$ 4,600
$ 5,500
$ 3,850.00
Automobile expenses
3,070
2,925
2,409.75
Petitioners claimed no deductions with respect to expenses and/or mileage for which Beers reimbursed the petitioner, nor any deductions for mileage between Wind Gap and South Boundbrook. Petitioners also claimed $ 1,300 of miscellaneous employee business deductions for 1976 listed on the return as follows: Union dues & assessments
$ 975
Small perishable tools
175
Safety & protective equipment
used only for work
150
$ 1,300
In the statutory notices, the Commissioner disallowed the meals and lodging expense deductions on the ground that the petitioner was not "away from home" for purposes of section 162(a)(2) when he incurred them. The Commissioner disallowed the automobile and miscellaneous business expense deductions on the ground that they had not been properly substantiated. OPINION The petitioner resided in Wind Gap, Pennsylvania, and worked for a construction firm (Beers). Ninety percent of Beers' work was located in New Jersey. Petitioner's task, which was to *682 oversee generally all of Beers' construction jobs, required him to travel extensively to and between job sites. To save time, petitioner rented an apartment in South Boundbrook, New Jersey, which was significantly closer to most of the job sites than was Wind Gap. Petitioner stayed in the apartment during the workweek and returned to Wind Gap for the weekends. Each workday he would drive in his personal automobile from the apartment to and between the job sites and return. Issue 1. Locus of Petitioner's Tax Home
Section 162(a)(2)[2] allows a taxpayer to deduct his expenses for meals, lodging, and transportation incurred while away from home in pursuit of a trade or business. Section 262 prohibits deductions for personal, living, or family expenses. There are three criteria for determining whether travel expenses are deductible: (1) the expenses must be reasonable and necessary; (2) they must be incurred "while away from home"; and (3) they must be incurred in the pursuit of a trade or business. Commissioner v. Flowers,326 U.S. 465, 470 (1946). In order to be *683 deductible, an expenditure must satisfy all three conditions. This Court has consistently defined the word "home" as used in section 162(a)(2) to mean the vicinity of a taxpayer's principal place of employment if different from that of his personal residence. Kroll v. Commissioner,49 T.C. 557, 561-562 (1968). An exception to this rule applies where the taxpayer's principal place of business is "temporary" as opposed to "indefinite." Peurifoy v. Commissioner,358 U.S. 59, 60-61 (1958). See Kroll v. Commissioner,supra at 562. *684 A place of business is "temporary" if the termination of the taxpayer's employment there within a short period of time can be foreseen. An employment is "indefinite" if its termination cannot be foreseen within a fixed or reasonably short period of time. Mitchell v. Commissioner,74 T.C. 578, 581 (1980). Although now usually expressed as a perse rule, this doctrine is supported by a persuasive rationale of which there is no finer statement than the following language in Kroll,supra at 562-563: The purpose of the "away from home" provision is to mitigate the burden of the taxpayer who, because of the exigencies of his trade or business, must maintain two places of abode and thereby incur additional and duplicate living expenses. * * * The "tax home" doctrine is directed toward accomplishing this purpose. In effect, it asks the question whether in a particular case it is reasonable to expect the taxpayer to maintain a residence near his trade or business and thereby incur only one set of living expenses, which are of course nondeductible under section 262. If it is reasonable so to expect, as where a taxpayer has only one post of duty, which *685 is permanent, then if he in fact chooses to maintain his residence elsewhere and incur living expenses near his trade or business as well, the duplication of expenses thereby resulting arises not from the needs of his business but from the taxpayer's personal choice. When, then, a taxpayer moves to a new permanent post of employment, it is generally reasonable to expect him to move his residence as well, and if he does not do so, and thereby incurs living expenses at his new post of employment while maintaining his old residence, the duplication again does not arise from business needs, but from personal considerations. If, however, the taxpayer's stay at the new post of business is to be temporary--"the sort of employment in which termination within a short period could be foreseen" * * * -- it is not reasonable to expect him to move his residence; so if he incurs living expenses at the temporary post, these are traveling expenses required by the trade or business rather than by personal choice, and they are therefore deductible. [Citations omitted.] Our inquiry is accordingly whether petitioner had business reasons for maintaining both his Wind Gap home and his South Boundbrook *686 apartment and hence incurring duplicate living expenses. We note at the outset that petitioner has the burden of proving that his tax home was Wind Gap. Welch v. Helvering,290 U.S. 111 (1933). We find the case of Daly v. Commissioner,72 T.C. 190, 195-197 (1979), affd. on rehearing enbanc662 F.2d 351 (4th Cir. 1981), to be of controlling significance. In Daly the taxpayer was employed as a district sales manager and was assigned to a sales territory including Delaware, New Jersey, and eastern Pennsylvania. He and his family resided, however, in McLean, Virginia, a suburb of Washington, D.C. The taxpayer maintained an office in his home in McLean at which he performed some tasks incidental to his employment. His most important duties were the sale and promotion of his employer's products which he performed in his sales district by making personal calls on customers and potential customers. The taxpayer's usual routine was to travel each week from McLean to a location in his territory to make sales calls, stay there two nights, and return to McLean. Eighty percent of these sales trips were to locations within *687 88 miles of Philadelphia; only six percent were to locations within 85 miles of McLean. The taxpayer chose to maintain his home and office in McLean, rather than inside his sales territory, to allow his wife to keep her Washington, D.C., job and to avoid the inconvenience of selling his home and moving his family. We held that the taxpayer's "tax home" was the Philadelphia area because it was the center of his income-producing activity and because his only reasons for maintaining his home and office in McLean rather than in his sales territory were personal. Thus, the duplicate living expenses resulted not from the exigencies of his employer's business but from the taxpayer's personal desire to maintain a residence in one area while working in another. The Philadelphia area was accordingly the taxpayer's principal place of business and, therefore, his "tax home." Although he made no claim to temporary status, we specifically noted that he had been assigned to his sales district for ten years. Thus, his performance of services in his sales district court not be viewed as temporary and it was not, therefore, unreasonable to have expected him to move his residence there. In the *688 instant case, ninety percent of petitioner's work was performed in New Jersey. The apartment in South Boundbrook, New Jersey, was clearly more centrally located to most of his work sites than was Wind Gap, as he stayed in the apartment in order to minimize his traveling time between work and his residence. Petitioner claims that he could not have been expected to move his residence from Wind Gap to some location more geographically central to his work and thereby avoid duplicate living expenses because he was only temporarily away from Wind Gap he was working at a given job site. It is true that the precise locations of Beers' job sites were constantly changing but at any given time they were almost all located in New Jersey. Thus, while petitioner was not permanently employed at any one job site, he was permanently employed in the New Jersey area. He had been with Beers since 1973 and Beers' work, at least since then, had been primarily located in New Jersey. Petitioner has not shown that during the years in issue there was any reason to anticipate a change in this primary location. New Jersey could fairly be characterized as the center of Beers', and hence petitioner's, income-producing *689 activity. The fact that petitioner decided to rent an apartment at this location over a relatively long term itself bespeaks of the permanence of his employment there. His situation is quite analogous to that of the taxpayer in Daly v. Commissioner,supra, who made trips to different locations but all within the same sales territory he had been assigned for a number of years. Only personal choice rather than business necessity prevented him from moving his residence to his sales territory to avoid duplicate living expenses. The same is true of petitioner. Unlike the taxpayer in Daly, he has shown not even a peripheral business connection to Wind Gap. He has not demonstrated why his business required that he maintain two separate residences, although he may well have had personal reasons for continuing to reside in Wind Gap--e.g., strong ties to family, friends, and church, a desire to avoid the inconvenience and trauma of moving, a more pleasant living environment for his wife and children, etc. These motives, however legitimate, could not and did not make it unreasonable to have expected petitioner to move his permanent residence to South Boundbrook *690 or to another location in New Jersey closer to the center of his work since his employment there was permanent and it may reasonably be said in this situation, as in Daly,supra, that his principal place of business was at or near the center of his income-producing activity. Foote v. Commissioner,67 T.C. 1, 4 (1976). Petitioner chose to reside in South Boundbrook to be more centrally located to his work. Petitioner's choice is persuasive evidence that the apartment was in fact so located and can thus be considered his tax home.We so hold. Thus, while residing at the apartment, petitioner was not "away from home" and his meals and lodging expenses were accordingly not deductible. [3]
Issue 2. Commuting Expenses
Respondent contends that *691 petitioner may not deduct any automobile expenses or depreciation attributable to mileage driven from his apartment to his first job site at the beginning, or from his last job site to the apartment at the end, of a given workday. Respondent appears to abandon his historical position that daily commutes to and from job sites outside of a taxpayer's general area of employment are deductible if the taxpayer's employment at the job sites was "temporary." Rev. Rul. 190, 1953-2 C.B. 303. Although we have in the past consented to decide cases on the basis of the revenue ruling if both parties so framed the issues, McCallister v. Commissioner,70 T.C. 505 (1978); Norwood v. Commissioner,66 T.C. 467 (1976), the respondent now contends that petitioner's daily trips to and from clearly temporary job sites are nondeductible commuting expenses. Based upon our prior cases, we agree with respondent. In general, commuting expenses are not deductible because they are personal expenses. Commissioner v. Flowers,326 U.S. 465 (1946). Transportation *692 expenses not incurred while a taxpayer is away from home are deductible, if at all, only pursuant to the general language of section 162(a), i.e., as ordinary and necessary business expenses. They are not section 162(a)(2) travel expenses and the concepts and analyses developed under section 162(a)(2) do not apply to them. In particular, the concepts of "temporary" and "indefinite" employment used in determining, for purposes of section 162(a)(2), whether it is reasonable for a taxpayer to move his residence near to his employment, are of no value in distinguishing business-related transportation expenses from commuting expenses. Turner v. Commissioner,56 T.C. 27 (1971), vacated and remanded on respondent's motion in an unpublished order (2d Cir., Mar. 21, 1972). [4]
Travel away from home is that which requires sleep or rest. United States v. Correll,389 U.S. 299 (1967). Thus, a taxpayer who drives each day from his residence to his place of *693 work and returns is not "away from home" even though his residence may constitute his tax home. Hence, it is irrelevant that his employment at any given work place may be "temporary." Our position is that travel each day from a personal residence (whether or not it is the taxpayer's "tax home") to the location that he or she begins work, and from the location that he or she ceases work to the personal residence, is commuting, regardless of the nature of the work engaged in, the distance traveled, or the mode of transportation used. The temporary nature of a taxpayer's job cannot convert commuting expenses into ordinary and necessary business expenses. Turner v. Commissioner, supra at 32-33. [5]
*694 supra at 32-33. We now apply these rules to petitioner. Petitioner's trips from his apartment in South Boundbrook to and between job sites and return well all made in one day and required neither sleep nor rest.Hence, petitioner was not away from home on these trips and section 162(a)(2) does not apply. As the apartment was his personal residence in the New Jersey area, expenses attributable to driving each day from the apartment to the first job site which he supervised, and from the last job site which he supervised to the apartment, were nondeductible commuting expenses, even though the apartment was his tax home and the job sites were "temporary" (in that they were constantly changing). However, automobile expenses attributable to petitioner's travel betweenjobsites are business related and hence deductible, if substantiated. An analogous case is Heuer v. Commissioner,32 T.C. 947 (1959), affd. 283 F.2d 865 (5th Cir. 1961). The taxpayer was a river boat pilot who was assigned to pilot ships in different locations each day. On many days he would receive several different assignments. Often, during a given day, he would drive *695 from his residence to places of assignment, from one assignment to another, and back to his residence. We held that his automobile expenses attributable to travel between his residence and points of assignment and return were personal expenses incurred in traveling to and from the site of his work, rather than expenses paid or incurred in the carrying on of his trade or business, and were thus nondeductible commuting expenses. Heuer v. Commissioner,supra at 952.By contrast, we determined that automobile expenses attributable to travel between points of assignment were deductible. Heuer v. Commissioner,supra at 953. Also, Curphey v. Commissioner,73 T.C. 766, 777-778 (1980), on appeal (9th Cir., Nov. 24, 1980). We, therefore, hold (1) that petitioner's apartment in South Boundbrook was, during the years in issue, petitioner's tax home for purposes of section 162(a)(2); (2) that his rent for the apartment was not deductible as it was not incurred away from home; (2) that he has not proven that he consumed his meals in the New Jersey area while away from the apartment on overnight business trips and, therefore, may not *696 deduct the cost of such meals; and (4) that petitioners may deduct unreimbursed automobile expenses attributable to mileage driven by petitioner between job sites, but not to mileage from the apartment to the first job site and from the last job site to the apartment. Issue 3. Substantiation of Automobile Mileage and Miscellaneous Business Expense Deductions
We have held that petitioners may deduct automobile expenses attributable to mileage driven by petitioner between Beers' job sites, if they can substantiate the amount of such mileage. Petitioner submitted in evidence certain logbooks relating to his business activities for the years in issue. He testified that for each day he resided at the apartment and performed services for Beers, he made an entry in the logbook listing, interalia, the amount of mileage he had driven between the apartment to and between the various job sites he was required to supervise and return. He testified further that he included in the logbooks no mileage from Wind Gap to the apartment and back at the beginning and end of his workwork, nor any mileage for which he was reimbursed by Beers. The automobile expenses claimed in the *697 returns were based upon the logbooks. Although we find petitioner's testimony credible since he appeared to be an honest and forthright witness, we cannot allow him a deduction for business mileage because he made no allocation in the logbook between commuting mileage (i.e., from the apartment to his first job site of the day and from his last job site of the day back to the apartment) and business mileage (i.e., between job sites). Nor can we estimate the amount of such mileage under Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930), because we have no rational basis for doing so. With respect to the 1976 miscellaneous business expense deduction, petitioners have presented no evidence that they paid or incurred these expenses or that they were of a deductible nature if paid or incurred. We accordingly sustain the Commissioner's disallowance of these. To reflect the foregoing, Decisions will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended.↩
2. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) IN GENERAL.--There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including-- (2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business; * * *↩
3. It was not clear from the record where petitioner consumed his meals while residing and working in the New Jersey area. The inquiry is rather moot, however, because meals are deductible only on trips during which a taxpayer is away from home overnight. United States v. Correll,389 U.S. 299↩ (1967). The taxpayer has not shown that he made any overnight business trips from the apartment.
4. Harris v. Commissioner,T.C. Memo. 1980-56↩, on appeal (9th Cir., Aug. 25, 1980).
5. Our discussion of the relationship between commuting and "away from home" expenses is confined to the factual context of this case. As to the broader potential ramifications of this relationship, see Rev. Rul. 190, 1953-2 C.B. 303; Rev. Rul. 76-453, 1976-2 C.B. 86; Announcement 77-147, 1977-42 I.R.B. 45; Pub. L. 95-427, 92 Stat. 996; Pub. L. 96-167, 93 Stat. 1275; McAllister v. Commissioner, 70 T.C. 505, 508 n. 5 (1978); Harris v. Commissioner, T.C. Memo. 1980-56. We note that under Rev. Rul. 190↩, petitioner would be required to prove not only that the job sites were temporary (which he has proven) but also that they were outside of his general area of employment. The record suggests, however, that New Jersey, New York, and Pennsylania were his general area of employment. Petitioner has presented no evidence otherwise. As all of the trips recorded in the logs were in this area, petitioner has not shown that the related transportation expenses are deductible. Thus, the result reached under the revenue ruling would be the same as the one we reach under our prior decisions.