THOMAS J. BARNES, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Barnes
Docket No. 13037-90
United States Tax Court
T.C. Memo 1992-720; 1992 Tax Ct. Memo LEXIS 766; 64 T.C.M. (CCH) 1552; December 21, 1992, Filed Decision will be entered under Rule 155. Thomas J. Barnes, pro se. For Respondent: Theodore R. Weckel. GERBER
GERBER
MEMORANDUM OPINION GERBER, Judge: Respondent, by a notice of deficiency, determined Federal income tax deficiencies and additions to tax for petitioner's 1986 and 1987 taxable years, as follows: Additions to Tax
Year
Income Tax
Sec. 6653(a)(1)(A)
Sec. 6653(a)(1)(B)
Sec. 6661(a)
1986
$ 6,784
$ 339
[1]
$ 1,696
1987
10,248
512
[1]
2,045
All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated. To resolve the parties' controversy, we must first address a threshold question of whether petitioner's activity was not engaged in for profit within the meaning of section 183. If we decide that petitioner was engaged in a for profit *767 activity, then we must consider whether various of petitioner's claimed deductions were substantiated and ordinary and necessary. We must also consider whether certain of petitioner's deductions were nonbusiness (Schedule A deductions), or business (Schedule C deductions). Finally, we are asked to decide whether petitioner is liable for additions to tax under sections 6653(a)(1)(A) and (B), and 6661(a). For convenience we shall combine our findings of fact and opinion with respect to each issue or subcategory. The parties entered into a stipulation of facts, along with attached exhibits, all of which are incorporated by this reference. Petitioner had his legal residence at Tarzana, California, at the time of the filing of the petition in this case. Section 183 -- Whether Petitioner was Engaged in a Not for Profit Activity
An "activity not engaged in for profit" is defined by section 183(c) as any activity other than one for which deductions are allowable under section 162 (relating to trade or business expenses), or section 212(1) or (2) (relating to expenses for the production or collection of income, or for the management, conservation, or maintenance of property held *768 for the production of income). A taxpayer need not prove that he had a reasonable expectation of profit in order to establish that he engaged in the activity for profit; he must show, however, that he entered into, or continued the activity with the actual and honest objective of making a profit. Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983); Golanty v. Commissioner, 72 T.C. 411 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981); sec. 1.183-2(a), Income Tax Regs. In determining the taxpayer's objective, greater weight is given to objective facts than to the taxpayer's mere statement of intent. Sec. 1.183-2(a), Income Tax Regs.
All facts and circumstances that bear on the activity are to be taken into account in determining whether it was engaged in for profit. Sec. 1.183-2(b), Income Tax Regs. Included in the regulation are nine factors as among those that should normally be considered: (1) The manner in which the taxpayer carried on the activity; (2) the expertise of the taxpayer or his *769 advisers; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) the presence of elements of personal pleasure or recreation. No single factor is controlling. Golanty v. Commissioner, supra at 426; Dunn v. Commissioner, 70 T.C. 715, 720 (1978), affd. 615 F.2d 578 (2d Cir. 1980). Petitioner received a college degree in political science. Part of his undergraduate studies included courses in business administration, business law, economics, and financial management. He also finished three semesters of law school. Petitioner worked with National Waterlift Control Systems, a Government defense contracting business, where he was involved in quality control for aerospace products and in production management. During *770 the years under consideration, petitioner worked as a field procurement specialist or professional expediter for Litton Industries, Inc. In that position, petitioner would follow up on delinquent orders and make sure that the supplier was fulfilling Litton Industries' orders in a timely fashion. He worked a 40-hour week and received $ 34,295.14 and $ 42,721.32 in wages for 1986 and 1987, respectively. Although paid based upon a 40-hour work week, petitioner was substantially autonomous and spent most of his time visiting the business premises of suppliers where he observed and inquired about the ordered products. He was free to schedule how to best use the 40 hours to perform his duties. During 1984, petitioner conceived of the idea of performing business and financial management consulting. Prior to that time he had been successful when gratuitously providing financial-type advice to others. He used the name Great Western International which was shown on his printed stationery along with the explanation: "Professional Business Consulting & Service Firm". Petitioner was a member of the National Purchasing Management Association. He did some research into the concept and canvassed *771 people by letter. His research and canvassing convinced him that there was potential for his idea. He pursued the concept and also worked for National Waterlift Control Systems. During 1986 and 1987 he continued to pursue the business, but it was not successful enough and so petitioner also obtained employment with Litton Industries. Throughout the years under consideration petitioner sent out thousands of mailers, advertised in magazines, and personally contacted people concerning his consulting activity. He spent from 20 to 40 hours each week on his consulting activity. During the period under consideration, petitioner assisted customers in their financial transactions and related matters. Petitioner employed a secretary on a part-time basis for his consulting activity throughout the period under consideration. Although petitioner did keep some records, at the time of trial his records were, to some extent, incomplete. Petitioner occasionally analyzed his consulting activity and considered approaches to acquire more customers. Over a 3-year period petitioner attempted several different approaches to increase the profitability of the activity. During 1988, petitioner decided *772 that his best efforts were not going to result in his "making a living at [the activity]." Under these circumstances we hold that petitioner entered into or continued the activity with the actual and honest objective of making a profit. Although his activity was not successful and respondent implies that petitioner's expectation of profit was not reasonable, that is not the standard to meet in establishing that activity was engaged in for profit. Having decided that petitioner was in an activity for profit, we go on to consider whether he has shown entitlement to claimed deductions which remain in controversy. Automobile Expenditures: Petitioner claimed automobile expenses, as part of employee expenses and under other categories on Schedule A of his 1986 and 1987 income tax returns. Subsequently, during the litigation process, petitioner supplied respondent's counsel with Schedules C in which he separately reflected the claimed automobile and other deductions in connection with his consulting activity. During 1986 and 1987 petitioner claimed and was reimbursed, at a rate of 21 cents per mile, for any mileage performed on behalf of his employer(s). Petitioner did not show *773 the total mileage driven for his employer during each year or the amounts for which he was specifically reimbursed. Petitioner operated only one automobile during 1986 and 1987, and he drove it for three different purposes. He drove it as an employee, in his consulting activity, and for personal purposes. During 1986 petitioner maintained a log from January 2 through August 23. Petitioner developed the log based upon the vouchers submitted to employers for automobile reimbursement. The logs reflected 2,789 miles of driving in connection with the consulting activity and without considering reimbursed or personal mileage. Petitioner did not keep the log after August 23, 1986, but his fuel and maintenance expense records reflected continuous and steady use of the automobile during the period under consideration. Petitioner claimed deductions in connection with the operation of his automobile, such as fuel, repairs, and depreciation. Petitioner, however, is unable to differentiate between the percentage use for his employer, consulting, and personal. Accordingly, we are limited to following the standard mileage rate approach, rather than actual expenditures and depreciation. *774 The burden is on petitioner to show the amount of the deduction to which he is entitled. New Colonial Ice Co. v. Helvering, 292 U.S. 435 (1934). This is especially true in the setting of this case where the various types of reimbursed and nonreimbursed business uses must be segregated from personal use. Anderson v. United States, 368 F.2d 225, 226 (5th Cir. 1966); Michaels v. Commissioner, 53 T.C. 269, 275 (1969). Petitioner had formal records for the 8-month period ending August 23, 1986. Those records reflected 2,789 nonreimbursed business miles. In the absence of formal records for the remainder of the taxable periods, secondary sources may be used to reach some reasonable approximation of the allowable amount of the deduction claimed. Sec. 1.162-17(d), Income Tax Regs.
Considering this record, we find that petitioner had nonreimbursed business mileage of 3,500 in each of the years 1986 and 1987. In reaching this approximated conclusion, we bear heavily on petitioner, "whose inexactitude is of his own making." Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). *775 Accordingly, petitioner is entitled to deduct $ 735 (3,500 x .21) for 1986 and $ 787.50 (3,500 x .225) for 1987 automobile expenses in connection with his consulting business in lieu of the amounts he claimed for operating expenses and depreciation. See Rev. Proc. 86-38, 1986-2 C.B. 701, and Rev. Proc. 87-49, 1987-2 C.B. 646, both of which have been superseded. Dues and Publications: Petitioner claimed dues and publications of $ 226.65 for 1986 and $ 189.49 for 1987. At trial petitioner referenced several checks written to various book stores which totaled $ 226.65 for 1986 and $ 189.49 for 1987. In addition, petitioner paid $ 150 in each year to the National Purchasing Management Association. Again, the burden is on petitioner and the evidence is, at best, sketchy. Considering this record, we find that petitioner is entitled to a dues and publications deduction in each of the years 1986 and 1987 in the amount of $ 200 per year. In reaching these approximated conclusions, we again bear heavily on petitioner, "whose inexactitude is of his own making." Cohan v. Commissioner, supra. *776 Cleaning Expenses: Petitioner claimed expenses for cleaning his clothing. It was not argued or shown that the cleaning expenditures were while petitioner was away from home. The clothing in question consisted of petitioner's everyday attire, was not specialized, and could have been worn for other purposes. Such expenditures are clearly personal and not deductible. Sec. 262; Kennedy v. Commissioner, 451 F.2d 1023 (3d Cir. 1971); Yeomans v. Commissioner, 30 T.C. 757 (1958). Legal Expenses: Petitioner claimed $ 119 for his 1986 taxable year in connection a fee paid to a lawyer in an attempt to consider ways to collect fees from clients for whom petitioner had consulted. We find that petitioner is entitled to a $ 119 deduction in his 1986 taxable year for business legal expense. Office in Home Expenses: Petitioner paid $ 416 per month rent for a six-room apartment or $ 4,992 per year. Petitioner used one room exclusively for his consulting activity. Petitioner furnished that room with a word processor, typewriter, a desk, four chairs, books and an "answerphone". He claimed $ 818 allocable to the office *777 room for 1986 and $ 964 with respect to 1987. Petitioner did not receive any income from his activity during 1986. With respect to the taxable year 1986, petitioner is not entitled to any amount attributable to an office in the home due to the limitation of section 280A(c)(5). That section limits any deduction that otherwise qualifies to any amount which shall not exceed the excess of the gross income derived from the activity. Because petitioner had no gross income for 1986 he is not entitled to any deduction for use of a home office. See Zurstadt v. Commissioner, T.C. Memo. 1986-502. With respect to the 1987 taxable year, petitioner has shown exclusive use of the home office for his consulting activity. He described and corroborated various mailings, other solicitations, and the use of the space by a part-time paid secretary to perform business-related activity. We are convinced that the designated space was used on a regular basis as petitioner's principal place of conducting his consulting business. Accordingly, petitioner is entitled to deduct $ 964 for the 1987 taxable year. [1]
*778 Additionally, for 1986 and 1987 petitioner claimed utility bills of $ 284.78 and 248.78, respectively. Those amounts represent 20 percent of the total amount billed to petitioner for power, water, and telephone. As noted above, petitioner is not entitled to the cost of his home office for 1986 due to the gross income threshold and limitation. Regarding 1987, petitioner is entitled to the $ 248.78 claimed as home office expense. Office Expenses: Petitioner claimed office expenses of $ 1,592.79 for 1986 and $ 1,428.88 for 1987. Those expenses included stationery, postage, office supplies, and secretarial expenses. Based on the entire record, we find that petitioner has shown he is entitled to office expenses of $ 1,569.68 for 1986 and $ 1,336.88 for 1987. Travel and Entertainment: Petitioner claimed travel and entertainment expenses of approximately $ 1,500 for 1986 and $ 3,500 for 1987. Petitioner explained that the amounts were expended on travel, meals, and lodging in connection with prospective clients. In respect of petitioner's position, the record consists of canceled checks and petitioner's uncorroborated and generalized testimony, which was devoid of any detail *779 or specifics. Respondent contends that petitioner has not met the requirements of section 274(d) and regulations thereunder, and that petitioner has not carried his burden of showing entitlement to the deductions. We agree with respondent. Section 274(d) requires petitioner to substantiate the amount of the expense and the time and place of the travel, which he has done. Additionally, petitioner must show, by adequate records or sufficient evidence corroborating his own statement, the business purposes of the expenses, which he has not done. See Kellstedt v. Commissioner, T.C. Memo. 1986-435; Smith v. Commissioner, T.C. Memo. 1985-366. To the extent that petitioner made payments for entertainment of clients, section 274(d) would deny a deduction unless petitioner "substantiates by adequate records or by sufficient evidence corroborating * * * [his own] statement * * * the time and place of the * * * entertainment, * * * the business purpose of the expense * * * and the business relationship * * * of persons entertained". Petitioner cannot seek refuge from these rigorous requirements in Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930), *780 because it is clear that Cohan does not apply to the expenses covered under section 274. See Sanford v. Commissioner, 50 T.C. 823, 827-828 (1968), affd. per curiam 412 F.2d 201 (2d Cir. 1969), cert. denied 396 U.S. 841 (1969). Accordingly, petitioner is not entitled to any deduction for travel and entertainment for 1986 or 1987 due to his failure to meet the requirements of section 274(d). Interest Payments: Initially, petitioner had claimed interest expense deductions on Schedule A of his 1986 and 1987 income tax returns. Now that petitioner is claiming his consulting activity and related expenses as part of a business on Schedule C, the amount of remaining Schedule A deductions, including the interest, does not exceed the amount of standard deduction that petitioner would be entitled to without proof of any additional deductible expenditures. Accordingly, petitioner argues that for purposes of this case, the interest expense amounts (which are agreed to by the parties) are business related and belong on his Schedule C. Petitioners testimony was somewhat vague regarding the character *781 of the interest expense. It appears, to some extent, that the interest relates to debt on petitioner's automobile. Because petitioner was not able to provide total mileage and allocate the amounts attributable to his activity as an employee, to his consulting activity, or to his personal use, we must conclude that any interest expenses for 1986 or 1987 belong on Schedule A and may be preempted by use of the standard deduction. Additions to Tax -- Sections 6653(a)(1)(A) and (B), and 6661: Section 6653(a)(1)(A) provides an addition equal to 5 percent of the underpayment if any part of any underpayment is due to negligence or intentional disregard of rules or regulations. Section 6653(a)(1)(B) provides an addition equal to 50 percent of the interest on the portion of the underpayment attributable to such negligence or intentional disregard. Negligence is the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). In the setting of this case petitioner put forth a reasonable effort to prepare his Federal income tax return. For the most *782 part, he maintained adequate records, but was unsuccessful because of some technical limitation, such as those contained in sections 280A(c)(5) and 274(d). Additionally, some of his errors concerned the technical distinction of whether certain items which were otherwise deductible were deductions from gross income or from adjusted gross income. Accordingly, we find that petitioner was not negligent within the meaning of section 6653(a)(1)(A) and (B) for the 1986 and 1987 taxable years. Section 6661(a) provides for an addition of 25 percent of an underpayment attributable to a substantial understatement of income tax. Pallottini v. Commissioner, 90 T.C. 498, 500-502 (1988). In the case of an individual, an understatement is substantial if it exceeds the greater of 10 percent of the tax required to be shown on a return or $ 5,000. Sec. 6661(b)(1)(A). The understatement is reduced by that portion of the understatement for which there is substantial authority for the position taken by the taxpayer, or for which the relevant facts affecting the disputed items' tax treatment are adequately disclosed on the return or in a statement attached to it. Sec. *783 6661(b)(2)(B). Petitioner's understatement was not based on substantial authority, nor were the relevant facts adequately disclosed on or in statements attached to the returns he filed with respondent. Thus, to the extent that the understatement exceeded the threshold amounts, petitioner is liable for additions to tax under section 6661(a) for his 1986 and 1987 taxable years. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. 50 percent of the interest due on the portion of the underpayment attributable to negligence.↩
1. Although the $ 964 does not comport completely with the $ 416 monthly rental, petitioner attributed the difference to a rent increase.↩